IN RE APPEAL OF MARY E. DATTILO

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON AND BALDWIN, JS.

 

Argued January 3—decided March 7, 1950.

*James F. Rosen,* with whom, on the brief, was *Gerald W. Brownstein,* for the appellant.

*Lyman H. Steele* and *Frank W. Flood,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, as amici curiae.[1]

MALTBIE, C. J.   This is an appeal from a decision of the Superior Court at a domestic relations session sustaining an order of the Juvenile Court denying an application to revoke the commitments of three children of the appellant.   The only claim made by her which justifies any extended discussion is that the trial court

---

[1] The children involved in this case were committed to the New Haven County Temporary Home; one of them is still there and the other two have been placed in foster homes.   The revocation of the commitments would have directly affected the interests of the Home, at least as custodian of the child still there, and it might properly have appeared as a party in the proceeding before the Superior Court.   As regards the two children in foster homes, it was stated before us that they were under the supervision and control of the state commissioner of welfare, and if that is so he too might have appeared as a party; but, as we stated in *In re Appeal of Dattilo,* 135 Conn. 512, 514, 66 A. 2d 596, the state as such is not a party to the proceeding.

had no right to consider certain reports made to the Juvenile Court by its investigators and sent to the Superior Court with the file of the case.

The rules of the Superior Court expressly provide, with reference to a hearing on an appeal from the Juvenile Court: "Such case histories and records of investigations as are in the' possession of the juvenile court shall be admissible in evidence . . . and any party adversely interested may require the presence for cross-examination of any persons whose report is before the court. . . ." Practice Book, c. 26A, § 2(c). The trial court, acting under this rule, did consider the reports. We could dispose of the contention of the appellant on the ground that at the hearing of the case before the Superior Court not only did she not object to such action by the trial court, as the court has found, but, as an examination of the evidence made necessary by attacks on the finding shows, her attorney expressly stated that he had no objection. The question raised upon the appeal is, however, one of such general concern as regards appeals in juvenile cases that we have decided to consider it.

In the revision of the statutes consequent upon the adoption of the constitution of 1818, the Supreme Court of Errors was given power to make such rules of practice for the regulation of that court and of the Superior Court "as shall be deemed most conducive to the administration of justice." Statutes, 1821, p. 137, § 5. The statute remained in force until 1855. Statutes, 1854, p. 265, § 12. In 1855 the rule-making power was taken from the judges of the Supreme Court of Errors and vested in an assembly of the judges of the Superior Court; they were authorized to "make all necessary and proper rules, not contrary to law, for the trial of causes and other proceedings in said superior court"; and they were directed to make such rules "as

shall promote dispatch in the business of said court, and secure, as far as possible, at every term, the completion of the business thereof." Public Acts, 1855, c. 26, §§ 9, 13; see Public Acts, 1859, c. 64, § 6. Except for the last clause, this provision was continued in effect until 1899. General Statutes, Rev. 1875, p. 43, § 16; Rev. 1888, § 772. The Practice Act of 1879 contained a provision authorizing the judges at their annual or other meetings to make such orders and rules as might be necessary "to give full effect to the provisions of this act." Public Acts, 1879, c. 83, § 33. This provision was omitted from the Revision of 1888, apparently because the broader terms of § 772 in that revision were deemed sufficient to cover the matter. In 1899 an act was passed which in the first section gave the judges of the Superior Court authority at their annual meeting to make all orders and rules necessary and proper to give full effect to the Practice Act and in the second section provided for their printing and distribution to attorneys. Public Acts, 1899, c. 5. The act contained no repealing provision. In the Revision of 1902, however, the broad authority of the judges to make rules contained in § 772 of the 1888 Revision was omitted and the provisions of the 1899 act were inserted, with the addition of authority to the judges to "make other rules for the dispatch of business in said court." General Statutes, Rev. 1902, § 467. That is the present statutory situation as regards the general rule-making power of the judges of the Superior Court. General Statutes § 7655.

As used in the statute of 1855, the word "dispatch" was clearly intended to have the meaning of a speedy disposition of matters in the court. Webster's New International Dictionary (2d Ed.). The revisers in 1902 were confronted with two laws then on the statute books, § 772 of the Revision of 1888, and chapter 5 of

the Public Acts of 1899. The first gave the judges of the Superior Court the power to "make all necessary and proper rules for proceedings in the Superior Court." The second gave them authority only to make rules to give effect to the Practice Act, with an added provision as to their printing and distribution. Apparently recognizing the limited extent of the power given in the latter statute as compared to the broader authority contained in the Revision of 1888, the revisers added to the provision of the 1899 act something not previously in it, the authority to "make other rules for the dispatch of business." It is presumed that revisers do not intend to change the law unless an intent to do so is apparent. *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 393, 400, 161 A. 852; *Columbus Industrial Bank* v. *Miller*, 125 Conn. 313, 319, 6 A. 2d 42. The intent of the words added in the 1902 Revision was evidently to continue the broader rule-making power contained in the 1888 Revision; and the word "dispatch" was clearly used with the significance "accomplishment." 3 Oxford Dictionary, Pt. 1, p. 479, "Dispatch" (5). In short, the statutes now give the judges of the Superior Court authority not only to make rules to carry out the provisions of the Practice Act but also, in the words of the 1855 act, to "make all necessary and proper rules, not contrary to law, for the trial of causes and other proceedings in said superior court."

Even if this were not so, it was within the power of the judges to make the particular rule in question. Apart from legislative authority, courts acting in the exercise of common-law powers have an inherent right to make rules governing procedure in them. *In re Hien*, 166 U. S. 432, 436, 17 S. Ct. 624, 41 L. Ed. 1066; *McDonald* v. *Pless*, 238 U. S. 264, 266, 35 S. Ct. 783, 59 L. Ed. 1300; *Woodbury* v. *Andrew Jergens Co.*, 61 F.

2d 736, 737; note, 110 A. L. R. 22; 14 Am. Jur. 355 et seq. That right is an inheritance from the common-law practice in England. *People* v. *Callopy*, 358 Ill. 11, 14, 192 N. E. 634. That the courts of this state, without any legislative authority, may make rules of procedure appears from a decision of the Supreme Court made in 1807. *Terry* v. *Capen*, 3 Day 495.

The statute authorizing an appeal to the Superior Court from a decision of the Juvenile Court does not state the nature and scope of the proceeding and contains only a single provision as to procedure. General Statutes § 2815. That provision authorizes the judge holding the session of the Superior Court at which such an appeal is heard to order an investigation to be made by a qualified probation officer or county investigator, whose written report is admissible in evidence subject to the right of any party to require him to appear for cross-examination. The purpose of the provision clearly is to authorize the court, in an appeal which involves the custody of infants, to adopt a procedure which would not be proper in an ordinary court action; it was obviously intended to be an extension of, not a limitation upon, the power of the court in such cases. The provisions of the statute fall far short of establishing a procedure for the orderly disposition of such appeals. Even lacking statutory authority, it would be well within the inherent power of the judges of the Superior Court to make rules which would bring about an orderly, expeditious and just determination of the issues.

The appellant suggests rather than directly claims that the admission in evidence of reports of investigators which were before the Juvenile Court in itself violates basic principles of evidence. The Juvenile Court is required to make a broad investigation of relevant circumstances to determine what disposition of

the case will best serve the welfare of the child, and in the case of a claim of delinquency the investigation is to be made by a probation officer. General Statutes § 2811. The statute makes admissible in evidence on the hearing of an appeal by the Superior Court the reports of the investigations it directs to be made; General Statutes § 2815; and the rule merely amplifies that provision to include reports of investigations made for the use of the Juvenile Court. The persons who made the investigations can be called as witnesses before the Superior Court, there to testify as to the facts they ascertained; the application of the rule saves time, trouble and expense in the disposition of the case, and at the same time protects the rights of the child and of interested parties by the provision that they may require any investigator whose report is before the court personally to appear and subject himself to cross-examination. See *Wadell* v. *Board of Zoning Appeals,* 136 Conn. 1, 8, 68 A. 2d 152. While we have found no case directly involving records of investigations of this nature, there is an increasing tendency to broaden the field of the admissibility of such reports. 5 Wigmore, Evidence (3d Ed.) p. 699; see General Statutes § 4316; *State* v. *Levy,* 103 Conn. 138, 146, 130 A. 96. In the case of *People* v. *Lewis,* 260 N. Y. 171, 178, 183 N. E. 353, relied upon by the appellant, the court was discussing the evidence which could be properly received in a children's court in deciding whether a child had committed a specific offense of a criminal nature on which a finding of delinquency could be based, not the broader considerations which are necessarily involved in determining whether the welfare of a child will best be served by leaving him with those who have custody of him or by placing him in the custodial care of some institution or other per-

son. There is nothing contrary to any statute, unreasonable or violative of the rights of the parties in the rule in question.

The appellant attacks several paragraphs of the finding, but for the most part the ground of objection is that they are based upon the reports of investigations made for the Juvenile Court, and it follows from what we have said that these assignments of error cannot be sustained. The material paragraphs of the finding, not subject to correction, present this situation: The children in question, two boys and a girl, in 1943 and 1945 were committed to the New Haven County Temporary Home and they are now in that home or in foster homes. Subsequent to the commitments, the mother obtained a divorce from her husband. She has remarried. While the physical facilities of the home where she lives with her present husband are adequate to care for the boys, they are not for the girl. The children are properly cared for and well adjusted to their present living conditions. The present husband of the mother has a police record which dates back to 1916 and includes a variety of charges. He has quarrelled frequently with his wife and in 1947 was sent to jail as the result of one altercation. The mother is of mediocre intelligence and both she and her husband are of an excitable temperament. Neither appeared to the court qualified to supervise adolescent children, and the husband would not be a good influence upon growing boys. The boys are easily led and require close supervision. We cannot find that the trial court was in error in concluding that the revocation of the commitments would not conduce to the best welfare of the children; and the appellant, as their mother, has no natural right to their custody which can prevail over such a disposition of the case as would serve their best

interests. *Mullins* v. *Becker,* 113 Conn. 526, 529, 155 A. 705; *Hunt* v. *Hunt,* 116 Conn. 701, 702, 163 A. 608.

There is no error.

In this opinion the other judges concurred.