David N. SUFFLING, pro se, et al.,
Plaintiffs,

v.

W. E. BONDURANT, Chairman, et al.,
Defendants.

Civ. No. 9211.

United States District Court,
D. New Mexico.

March 6, 1972.

David N. Suffling, Richard Paul Fahey, and Mason H. Rose, V, pro se.

Allen C. Dewey, Jr., Albuquerque, N. M., for defendants.

Before SETH, Circuit Judge, and MECHEM and BRATTON, District Judges.

## MEMORANDUM OPINION

This suit was brought as a class action before a three-judge district court for declaratory and injunctive relief. The Petitioners here are graduates of law schools accredited by the American Bar Association who have passed the examination of the Board of Bar Commissioners of the State of New Mexico. They have not been admitted to practice law in New Mexico and will not be until they have finished six months' residence in New Mexico and have furnised letters from attorneys in good standing who are practicing in New Mexico stating that Petitioners are of good moral character.

The Board of Bar Commissioners appointed by the Supreme Court of the State of New Mexico promulgates rules and regulations governing admission to the New Mexico State Bar. These are contained in Section 18–1–8 N.M.S.A. (1953 Comp.). Rule II, subd. A, par. 8 provides:

"An applicant for admission to the bar upon examination, except an attorney duly admitted to the bar in another state and actually engaged in the practice of law therein, must be an actual bona fide resident of the state of New Mexico at the time of examination. An applicant for admission to the bar, either upon examination or upon certificate and motion must be a citizen of the United States, an actual bona fide resident of the state of New Mexico for at least six months prior to admission, 21 years of age and of good moral character."

Petitioners Suffling, Fahey, and intervenor Schmidt took and passed the New Mexico bar examination in August, 1971. Suffling started his residence on June 10, 1971. Fahey began his residence on June 25, 1971. Both completed the required residency period during the pendency of this action. Schmidt, who had lived in New Mexico from 1942 until 1968 and had attended schools here, re-established his New Mexico residence on August 13, 1971. He will complete his six months' residency on February 13, 1972.

Rose passed the New Mexico bar examination in August, 1970. He claims residence by reason of having lived in New Mexico as late as October, 1960, having gone to school at the University of New Mexico and by virtue of employment and enlistment in the Marine Corps here. He claims dual residency with California. Prior to passing the New Mexico Bar examination, he attended school in California as a resident and took and passed the California bar examination as a resident. Rose resides in California and practices law in that state.

All of the Petitioners except Rose have been gainfully employed in New Mexico since having passed the bar examination in positions requiring legal training although not as admitted lawyers. None have undergone any economic hardship since passing the bar examination, although Suffling, Fahey and Schmidt could have earned more as members of the New Mexico Bar.

Petitioners contend that they are the subject of invidious discrimination, that they and the members of the class they represent are being denied equal protection guaranteed by the Fourteenth Amendment of the United States Constitution and that their right to interstate travel has been inhibited. They assert that two classes of citizens have been created for admission to the New Mexi-

co Bar—those who have established six months' residence, have passed the bar examination and have been admitted and those who have passed the bar examination but will not be admitted until their six months' residence has been established. Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L. Ed.2d 796 (1957).

It is their position that only a compelling state interest justifies restrictions on their right to travel and right to work and that Rule II, subd. A, par. 8 does not further such an interest. They rely on Shapiro v. Thompson, 394 U.S. 618, 89 S.C. 1322, 22 L.Ed.2d 600 (1969) wherein the United States Supreme Court applied the stricter rather than the traditional test of reasonableness of classification in determining Equal Protection. *Shapiro* held that the classification created by the imposition of a one-year waiting period for welfare benefits did not promote a compelling state interest and was unconstitutional. The holding of *Shapiro* is not applicable here however as that case specifically excludes persons seeking professional licenses.[1]

█ A state may require its bar members to be of good moral character and fit to practice their profession. Schware v. Board of Bar Examiners, supra. Accordingly, Rule II, subd. A, par. 10 of the Rules Governing Bar Examiners which provides that an applicant for examination must satisfy the Board of his good moral character is not challenged here.

A state may also require that an applicant for admission to the bar be a resident for a reasonable period of time in order that his character and fitness may be examined. Webster v. Wofford, 321 F.Supp. 1259 (N.D.Ga.1970).

The question seems to turn on the length of time required to determine good character and to establish residence before admission and whether that length of time is reasonable.

While the regulations require that residence and good moral character be established before taking the bar examination, the Commissioners have allowed the residence period to start at any time before the bar examination with the balance to be filled out after the examination. Residence in New Mexico can start at any time from five months and 29 days before or on the day of the examination with the balance of time to be completed after the examination and good moral character can be established after the examination.

None of the cases in which residency requirements have been held unconstitutional deals with the requirements as liberal as those of New Mexico.

Mississippi required twelve months' residency prior to application to take the examination and further required that a written application be filed at least ninety days before the time of examination. Residency in Mississippi was thus required for a total of fifteen months. Lipman v. Van Zant, 329 F.Supp. 391 (N.D.Miss.1971).

Georgia required establishment of good moral character before taking the examination and twelve months' residence after passing the examination prior to admission. Webster v. Wofford, supra. North Carolina required twelve months' residence prior to taking the examination and gave the examination only once each year. Keenan v. Board of Law Examiners of State of North Carolina, 317 F.Supp. 1350 (E.D. N.C.1970). In no case was less than one year's residence required and in *Keenan* the time could run as high as two years.

Potts v. Honorable Justices of Supreme Court of Hawaii, U.S.D.C. Hawaii, 332 F.Supp. 1392 (1971), dealt with a six months' residency requirement which was held to violate the

---

1. Shapiro v. Thompson, 394 U.S. at 638, Note 21, 89 S.Ct. at 1333: "We imply no view of the validity of waiting-period or residence requirements determining eligi- bility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth * * *"

Equal Protection Clause of the Fourteenth Amendment, but that case is distinguishable. The challenged statute and regulation in *Potts* required that an applicant for the bar examination be a qualified, registered voter and a resident for any six-month period after attaining age fifteen.

Hawaii also fixed a sixty-day registration period prior to the bar examination for the express purpose of enabling the Supreme Court to verify the educational background, morals and character of the applicant. Residency in Hawaii was not required during this sixty-day period. The three-judge court determined that since residency was not required during this period, residency for *any* six-month period after age fifteen would not furnish the Supreme Court with facts necessary for an informed judgment as to the applicant's character. The court held that the residency requirements were arbitrary, capricious and unconstitutional but declined to consider whether plaintiff's right to interstate travel or any other constitutional right had been infringed upon.

■ We conclude that six months' residence in New Mexico to be commenced either any time before the bar examination or as late as the day of the bar examination is a reasonable period in which to afford the Board of Bar Examiners an opportunity to investigate the morals and character of those persons who seek to become members of the New Mexico bar. It also provides a realistic time period in which three members of the bar residing in the applicant's locality can certify regarding his moral character as required by Rule VI (38) of the Rules Governing Bar Examiners.

■ Considered under the traditional test of reasonable classification which is the standard we hold applicable, the six-month residency requirement is reasonable and does not unduly penalize petitioners' right to interstate travel. While rejecting application of the stricter test of Equal Protection in this case,

Lipman v. Van Zant, supra, 329 F.Supp. at page 403, we express the view that a state does have a compelling interest in the quality and integrity of the persons whom it licenses to practice law and may impose regulations which promote that interest.

An order will be entered adjudging that the requirement of six months' residency in New Mexico for applicants seeking admission to the bar is constitutional.

BRATTON, District Judge (dissenting).

In Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed. 2d 796 (1957), the United States Supreme Court articulated the standard by which this case is governed:

A State cannot exclude a person from the practice of law or from any other occupation in a manner or for *reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment.* (Citations omitted) A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. 353 U.S. at 238–239, 77 S. Ct. at 756.

Applying the language of *Schware* to the present case, it is incumbent upon the Board of Bar Examiners to show that the 6 month residency requirement of Rule II, subd. A, par. 8 has a "rational connection" to the State's determination of fitness or capacity to practice law. Because I believe that the Board has failed to meet the burden, I cannot agree with the holding of the majority.

Rule II, subd. A, par. 8 creates two classes of bar applicants: (1) those who, at the time of the bar examination, have resided in New Mexico for 6 months, and (2) those who, at the time of the bar examination, have not been residents for the requisite period.

Members of the first class, otherwise qualified, are admitted to the bar immediately upon passing the examination. Members of the second class, otherwise qualified, are excluded from membership after passing the examination solely because they have not resided in the state for 6 months. That this is discrimination is not disputed. The question is whether the discrimination is supported by valid reasons. *Schware, supra* at 239, n. 5, 77 S.Ct. 752. If the reasons presented in support of the residency requirement are not valid, the requirement should fail as a violation of the Equal Protection clause.

The Board of Bar Examiners asserts three reasons in support of the residency requirement: (1) The period of residency allows the applicant to become familiar with local customs, governmental structure, rules of procedure and the like; (2) Residence in the state for the 6 month period allows the applicant to establish roots in the community of his choice and indicates an intent on the applicant's part to become a permanent resident; and (3) Residence for 6 months gives the community an opportunity to observe the applicant's moral character, thus facilitating the Board's evaluation of his capacity and fitness to practice law.[1]

The "local custom" theory and the "roots in the community" theory are unpersuasive. Indeed, the majority opinion does not rest its decision on either of these theories. Moreover, all of the cases dealing with residency requirements for admission to the bar have considered these theories and uniformly found them to be without merit. Keenan v. Board of Law Examiners, D.C., 317 F.Supp. 1350, 1359–1361 (1970); Webster v. Wofford, D.C., 321 F.Supp. 1259, 1261–1262 (1970); Lipman v. Van Zant, D.C., 329 F.Supp. 391, 400–401 (1971); Potts v. Honorable Justices of Supreme Court of Hawaii, D.C., 332 F. Supp. 1392, 1397–1398 (1971).

The majority opinion rests on the Board's assertion that the period of 6 months residency allows members of the applicant's community to observe his character, thus facilitating the Board's evaluation of the applicant's moral character at the end of the residency period. I disagree with the majority because the post-examination residency period is not contemplated by the Board's own rules for the purpose of evaluation of character.

By the terms of Rule II, subd. A, par. 10, the Board is required to find an applicant to be of good moral character *prior* to the applicant being allowed to take the bar examination.[2] In the face of this rule, the Board's contention that it is necessary to evaluate a non-resident applicant's character by a residency period *after* the examination is untenable.[3] The discrimination perpetrated upon applicants by the post-examination residency rule cannot be justified by an assertion inconsistent with the Board's own rules. To allow the Board such a justification not only furthers a violation of the Equal Protection Clause but

---

1. Under Rule VI, subd. 38, each applicant is required to submit certificates from 3 members of the bar residing in the community where the applicant lives that he has resided in the state for 6 months and that he is of good moral character.

2. Rule II, subd. A, par. 10 provides: "The board of bar examiners shall not permit any applicant to take an examination * * * unless such applicant shall satisfy the board of his good moral character." N.M.Stat.Ann. § 18–1–8 (Repl.1970).

3. The three cases considering durational residency requirements similar to, but longer than, New Mexico's have each found no rational connection between the requirement and a valid state purpose. Keenan v. Board of Law Examiners, *supra*; Webster v. Wofford, *supra*; Lipman v. Van Zant, *supra*. The evidence in this case was that in actual practice the Board had no procedure for affirmative action or evaluation by it of applicants during the post-examination residency period, relying instead on the attorney certificates required by Rule VI, subd. 38, and on information which might be volunteered to it. There was no evidence that anyone had ever actually been denied admission at the end of such period on the ground of moral character.

also denies these petitioners due process of law.

The inconsistency between the Board's justification of the residency requirement and its own rules renders the classification created by Rule II, subd. A, par. 8 without rational basis. These petitioners are being excluded from the practice of their chosen profession by a rule which violates the Equal Protection Clause of the Fourteenth Amendment. Such an unconstitutional rule should be struck down.

I dissent.