Jerome **SILVERMAN**, as **Administrator of the Estate of Harold Nathan and Adele Nathan, Plaintiffs,**

v.

Louis **D. BROWNING et al., Defendants.**

Civ. No. B–259.

United States District Court, D. Connecticut.

Dec. 14, 1972.

Alfred S. Julien, New York City, for plaintiffs.

Dion W. Moore, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for Louis D. Browning.

Frederick U. Conard, Jr., Shipman & Goodwin, Hartford, Conn., for Conn. Bar Assoc.

Arnold J. Bai, Goldstein & Peck, Bridgeport, Conn., for John J. Cloonan.

Barney Lapp, Asst. Atty. Gen., Hartford, Conn., for Hon. John P. Ryan and Judge Otto La Macchia.

Before SMITH, Circuit Judge, and CLARIE and NEWMAN, District Judges.

## MEMORANDUM OF DECISION

CLARIE, District Judge.

This civil rights action has been brought pursuant to 42 U.S.C. § 1983. The plaintiffs are Jerome Silverman, a New York State resident, who is suing as Administrator of the Estate of Harold Nathan, and Adele Nathan, the decedent's wife, who is a Connecticut resident. The Judges of the Superior Court of Fairfield County are named as defendants in this action, as well as those defendants named in the two state court civil actions, No. 15,983 and No. 15,991, which are still pending in the Superior Court of Fairfield County. The plaintiffs allege that the Connecticut procedure for admission *pro hac vice* of attorneys not regularly admitted as members of the Connecticut Bar violates the first, sixth, and fourteenth amendments to the United States Constitution. Jurisdiction is grounded upon 28 U.S.C. § 1343(3) and, because injunctive relief has been requested, a three judge panel has been convened pursuant to 28 U.S.C. §§ 2281 and 2283. A brief recitation of the history of the case is essential to a full understanding of its present posture.

On May 9, 1968, the plaintiffs engaged Attorney Alfred S. Julien, a New York medical malpractice specialist, as trial counsel to prosecute in the Connecticut state courts a claim for malpractice and negligence alleged to have been committed upon the plaintiff's decedent on November 7, 1967. Since Attorney Julien was not a member of the Connecticut Bar, he retained Connecticut counsel to prepare all of the papers and pleadings. It was intended that Attorney Julien would conduct depositions and the trial with local Connecticut counsel present. In October of 1968, a motion was filed in Superior Court by Connecticut counsel, requesting that Attorney Julien be permitted to take the deposition of one of the defendants in the case. This motion was granted.

However, in May of 1969, an order was issued by the Superior Court permanently enjoining Julien from "taking, participating in, assisting in or aiding and assisting other counsel at the taking of the depositions." In November of 1969, Julien was denied permission to try the state court malpractice and negligence actions.

In response to this denial, the plaintiffs sought relief in this Court, alleging a violation of their constitutional rights to counsel and to equal protection under the law. The District Court Judge held in a memorandum filed April 29, 1971, that there existed at that time an "in-

consistent nonsystem" of admitting attorneys to practice *pro hac vice,* wherein admission was dependent upon the absence of objection from opposing counsel and the subjectivity of individual Superior Court Judges. While the Court found that a denial of equal protection existed under the non-rule, the Court abstained, stating in part:

> "Both justice and comity for the state court system require that the state be afforded the opportunity to consider and establish an objective rule or benchmark in the Practice Act which would clearly set forth the rights of attorneys from other jurisdictions to practice *pro hac vice* in Connecticut's courts."

In response to this Court's decision, Rule 15A of the Connecticut Practice Act was promulgated and adopted by the Rules Committee [1] of the Connecticut Superior Court, effective September 1, 1971. That rule provides as follows:

> "An attorney who is in good standing at the bar of another state, the District of Columbia, or the Commonwealth of Puerto Rico, may, upon special and infrequent occasion and for good cause shown upon written application presented by a member of the bar of this state, be permitted in the discretion of the court to participate to such extent as the court may prescribe in the presentation of a cause or appeal in any court of this state; provided, however, that a member of the bar of this state must be present at all proceedings and must sign all pleadings, briefs and other papers filed with the court and assume full responsibility for them and for the conduct of the cause and of the attorney to whom such privilege is accord-

ed. Where feasible, the application shall be made to the judge before whom such cause is likely to be tried. Good cause for according such privilege shall be limited to facts and circumstances affecting the personal or financial welfare of the client and not the attorney. Such facts may include a showing that by reason of a long standing attorney-client relationship predating the cause of action or subject matter of the litigation at bar, the attorney has acquired a specialized skill or knowledge with respect to the client's affairs important to the trial of the cause, or that the litigant is unable to secure the services of Connecticut counsel."

The defendants then moved to dismiss the plaintiffs' action and to terminate this Court's jurisdiction. After a hearing, the Court denied the motion and directed that the plaintiffs proceed with all reasonable speed to petition the State Superior Court for the admission of Alfred S. Julien as trial counsel *pro hac vice* under the new Rule 15A. Pursuant to that order, a petition was accordingly filed. The petition was denied on May 5, 1972, and no appeal was taken from that ruling. The transcript of the hearing proceedings indicates that counsel for the plaintiffs and opposing counsel assumed that the word "may" in the last sentence of the rule was intended to be exclusive rather than illustrative; and that "good cause" required either the showing of a long-standing attorney-client relationship or the unavailability of Connecticut counsel. Failing to consider the precise meaning of the third sentence of Rule 15A which provides that "good cause for according such privilege shall be limited to facts or circumstances affecting the personal

---

1. Numerous Connecticut decisions recognize "the inherent right of the Superior Court, a constitutionally established tribunal, to promulgate rules for the admission of attorneys." State Bar Association v. Connecticut Bank & Trust Co., 145 Conn. 222, 231–233, 140 A.2d 863, 868 (1958). *See also* Stanley v. City of Hartford, 140 Conn. 643, 646, 103 A.

2d 147 (1954); In re Appeal of Dattilo, 136 Conn. 488, 492, 72 A.2d 50 (1950). Public Act (1957 Session) No. 651, § 7, also recognizes the authority of the Chief Justice of the Connecticut Supreme Court to convene conferences of the Judges of Connecticut Courts for consideration of matters relating to judicial business.

or financial welfare of the client and not the attorney," the Court focused only upon the justifications for, and applicability of, these two criteria.

■ There is no indication in the record that either counsel or the Court considered that the existence of a long-standing attorney-client relationship was merely one criterion which might affect the personal welfare of the client, and that the unavailability of competent local counsel was simply one circumstance affecting a client's welfare, financial or otherwise. Assuming, *arguendo*, that this were found to be true, it is doubtful that a constitutional issue would remain. In any event, a United States Court is not the proper forum in which to determine initially whether there exists "good cause," within the meaning of a recently promulgated rule which may well be susceptible to a constitutionally acceptable construction in the State courts.

■ This Court is not unmindful of the delay, expense, and inconvenience which abstention often entails. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 425, 84 S.Ct. 461, 11 L.Ed.2d 440 (1963); 1 Barron & Holtzoff (Wright ed.), § 64, pp. 343–344; Wright, Law of Federal Courts, § 52, p. 198. But neither is it unaware that nothing could be more irksome to the State of Connecticut and destructive of harmonious federal-state relations than a premature constitutional decision in such a sensitive area of the law. Ascertainment of whether there exist special circumstances which warrant invocation of the Abstention Doctrine must be made on a case by case basis, Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1963), bearing in mind that no principle of "our federalism" has found clearer or more consistent expression than that which dictates

" . . . [t]hat the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." Harri-

son v. N. A. A. C. P., 360 U.S. 167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959).

Until such an opportunity has been afforded and the law's actual, as opposed to theoretical, impact upon the litigants is known, Public Utilities Comm'n of California v. United States, 355 U.S. 534, 539, 78 S.Ct. 446, 2 L.Ed.2d 470 (1957), abstention is required. Reetz v. Bozanich, 397 U.S. 82, 85–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1969); Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1970); Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

The fact that the plaintiffs have failed to meet the requirements of § 604 of the Connecticut Practice Book (1970 Supplement) which requires that notice of appeal be filed within twenty (20) days of a judgment is not critical, for § 762 of the Practice Book further provides,

"(1) The design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice.

"(2) In the interest of expediting decision, or for other good cause shown, the supreme court may suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion."

This section provides a direct and uncomplicated approach through which it may be promptly determined whether an authoritative state court interpretation will be forthcoming to resolve an issue arising out of a state judicial rule.

Neither Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) nor McNeese v. Board of Education, 373 U. S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) was intended to abrogate "the historic rule . . . that suits in equity shall not be sustained in the courts

of the United States 'in any case where a plain, adequate and complete remedy may be had at law.' " Potwora v. Dillon, 386 F.2d 74, 77 (2d Cir. 1967). Moreover, the United States Supreme Court has recently stated:

"The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative or judicial' . . . . And this Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights. . . .

"In so concluding, we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." Mitchum v. Foster, 407 U.S. 225, 242–243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972).

■ The absence of special circumstances making delay intolerable and the existence of a prompt and efficient means by which it may be ascertained whether the state remedy is as adequate in practice as it appears in theory demand that the State Supreme Court be given a fair opportunity to construe Rule 15A. This is especially true in the present case, since plaintiffs' counsel could have avoided such delay had he followed the simple expedient of a timely appeal to the State Supreme Court and received either a final adjudication or a denial of the availability of state procedure.

Accordingly, it is ordered that:

The plaintiffs' motion for admission of Alfred S. Julien, *pro hac vice*, to practice before the Superior Court under Rule 15A of the Connecticut Practice Book is denied without prejudice to its being renewed after the State Supreme Court has acted with finality on the issues presented herein. The plaintiffs shall proceed with all reasonable diligence to obtain appellate review in the State Supreme Court.

The stay heretofore granted shall remain in effect so that the *status quo* of the state actions will not be prejudiced.

This Court will retain jurisdiction pending the final outcome of the plaintiffs' appellate application to the State Supreme Court.

The matter may be brought on before this Court for further proceedings on the application of any party and on notice to the others.

So ordered.

NEWMAN, District Judge, concurring in result with separate opinion.

J. JOSEPH SMITH, Circuit Judge, dissents with opinion.

NEWMAN, District Judge (concurring in the result):

In this case, posing significant and interesting substantive and procedural questions, I find myself in disagreement with each of the differing views expressed by the other members of this three-judge court.

The plaintiffs seek to employ an out-of-state attorney to appear on their behalf *pro hac vice* in civil litigation in the Connecticut Superior Court. If Connecticut barred all attorneys from appearing in state courts unless they were regular members of the Connecticut bar, the issue would be whether such regular bar membership (through examination or otherwise) may constitutionally be made a requirement to defeat the claim of a litigant to employ an attorney duly licensed in another state to represent the litigant in a particular case. But Connecticut has not denied all civil litigants the right to employ out-of-state counsel. On the contrary, Connecticut has adopted a rule specifying the circumstances under which a non-resident attorney who is in good standing in the

bar of another state may represent a civil litigant in the courts of this state. The issue on the merits in this case is whether Connecticut may constitutionally use the classifying criteria of Rule 15A to distinguish between those non-resident attorneys a civil litigant may employ and those he may not.[1]

While this case does not require decision as to whether there is a constitutional right to an out-of-state attorney, plaintiffs do assume, and properly so, that there is a right to select counsel of one's choice free of unconstitutional limitations. I think the existence of that right is unassailable. In his prior decision in this case Judge Clarie ruled that choice of out-of-state counsel was entitled at least to protection against arbitrary denial, and that the "inconsistent non-system" which had prevailed in the absence of an "objective rule" denied equal protection of the laws. Surely there would be no doubt of the substantiality of the question presented if a state permitted the *pro hac vice* admission of some out-of-state attorneys but denied admission to those who are members of a particular race or religion or who were identifiable by some other characteristic totally unrelated to any legitimate interest the state has in regulating the practice of law.

Thus for me the precise question on the merits is whether the criteria of Rule 15A are sufficiently related to a state's legitimate interests in regulating

the practice of law to pass muster under the equal protection clause. Even on the assumption that the proper test is whether the rule's criteria are rationally related to the state's legitimate interests rather than supported by a compelling state interest, Rule 15A poses a substantial question of validity.

Judge Clarie prefers to abstain from deciding that question now for several reasons, including the possibility that a state construction of the rule may avoid the constitutional issue raised. The construction adopted by Judge Tierney in the Superior Court is that *pro hac vice* admission may be granted only where a long-standing attorney-client relationship predating the litigation has enabled the attorney to acquire a specialized skill or knowledge of the client's affairs important to the trial, or where the client is unable to secure the services of Connecticut counsel. Judge Clarie suggests that the rule could more appropriately and more literally be read to permit *pro hac vice* admission upon any showing of "good cause . . . limited to facts or circumstances affecting the personal or financial welfare of the client" rather than upon fulfilling either of the two illustrative grounds which Judge Tierney appears to have made exclusive.

I do not believe either construction of the rule will avoid the constitutional issue. In determining whether the rule establishes criteria rationally related to the state's legitimate power in regulat-

---

1. Neither Martin v. Walton, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961), nor Suffling v. Bondurant, 339 F.Supp. 257 (D.N.M.), aff'd sub nom., Rose v. Bondurant (Chairman Bd. of N. Mex. Bar Examiners), 409 U.S. 1020, 93 S.Ct. 460, 34 L.Ed.2d 312 (1972), casts doubt on the substantiality of this issue. *Martin* upheld a Kansas requirement that a member of the bar of another state who regularly practices in such other state may practice before the Kansas courts only if he has associated with him as attorney of record a member of the Kansas bar. Plaintiffs do not question Connecticut's power to impose such a requirement and have in fact complied with it. *Suffling* upheld a New Mexico

requirement that applicants for admission to the bar must be state residents for at least six months. The lower court had found this requirement to be a reasonable period for the bar examiners to investigate the morals and character of bar applicants. 339 F.Supp. at 260. In this case Connecticut has not sought to specify any period of state residence to afford opportunity for investigation of the attorney plaintiffs wish to employ. If the criteria of Rule 15A are met, Connecticut is apparently willing to accept the non-resident attorney's membership in good standing in his home state bar as adequate evidence of his fitness. What remains in issue is the validity of the rule's criteria.

ing bar admission, we must identify the interest for which the state is entitled to exercise its power. That interest has already been identified by the Supreme Court. "A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Schware v. Board of Bar Examiners, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).

I doubt that under either construction of the state's rule the criteria for distinguishing between who is admitted and who is not have a rational connection with the applicant's fitness or capacity to practice law. While possession of a specialized skill might well be rationally related to an applicant's fitness, the Connecticut rule recognizes specialized skill only when it is the result of a long-standing attorney-client relationship. The attorney these plaintiffs wish to employ has a recognized skill in a special area of the law—malpractice litigation. Whether that skill was acquired in prior representation of these plaintiffs or other litigants is entirely unrelated to his capacity to practice law.[2] Similarly, the litigants' ability to secure the services of Connecticut counsel is entirely unrelated to the qualifications of the out-of-state attorney they wish to employ. The rule fares no better under the broader reading which makes admission turn on the presence of good cause limited to the welfare of the client. This standard is not a measure of the attorney's fitness or capacity to practice law. Of course the client's welfare is better served if his attorney is well qualified, but the "good cause" test of Rule 15A does not purport to be a basis for determining degree of qualification. There is no dispute here concerning the qualifications of the attorney plaintiffs wish to employ.

I recognize that in addition to assuring high standards of qualification in admitting attorneys, a state is entitled, in regulating the practice of law, to protect other interests such as assuring that the applicant will submit himself to the disciplinary power of the court and will cooperate with the court in the expeditious handling of litigation. But neither the two grounds of the rule as interpreted by Judge Tierney nor the broader "good cause" reading suggested by Judge Clarie bear any relation to these interests. I therefore see no need to await further state court construction of the rule.

Nor do I agree that either considerations of comity or equity jurisdiction provide a basis for declining now to decide the merits of plaintiffs' claim. While this suit arises in the middle of state court litigation, it does not present the kind of comity considerations that ought to persuade a federal court to hesitate before ruling upon the constitutional claim. As Judge Friendly has pointed out, those considerations are applicable when a state court defendant asks a federal court to block an action against him, not when a state court applicant for bar admission seeks federal court aid to eliminate an unconstitutional roadblock created by the state. Law Students Civil Rights Research Council, Inc. v. Wadmond, 299 F.Supp. 117, 122, n. 4 (S.D.N.Y.1969). Comity considerations are equally inapplicable where state court litigants seek federal court aid to eliminate what they claim is an unconstitutional roadblock to securing counsel of their choice.

In the absence of unresolved state law issues that might end the controversy, no plaintiff is required to exhaust state judicial remedies when claiming in federal court that his request to obtain the

---

2. The arbitrariness of using such a factor is evident whether Rule 15A is viewed as distinguishing between the attorneys these plaintiffs may employ and those they may not, or between civil litigants who may hire this attorney and civil litigants who may not.

services of a qualified professional has been unconstitutionally denied by a state agency with professional licensing responsibility. If the plaintiffs claimed they had been unconstitutionally denied the right to select an out-of-state doctor or architect, decisions of the Supreme Court on other civil rights claims would preclude our requiring exhaustion of state judicial remedies. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed. 2d 1319 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The fact that the state agency which has denied these plaintiffs' alleged constitutional right happens to be a state trial court is coincidental as far as comity considerations are concerned. We should no more require exhaustion of judicial remedies than if the decision adverse to these plaintiffs had been rendered by a state commission on out-of-state attorneys.

As to the restraints on a court of equity, outlined in Potwora v. Dillon, 386 F.2d 74, 77 (2d Cir. 1967), that decision reckoned only with *Monroe* and *McNeese* and not with the later decisions in *Damico, Houghton,* and *Wilwording.* The Second Circuit has since come to recognize the force of these later decisions in Rodriguez v. McGinnis, 456 F.2d 79 (2d Cir. 1972), cert. granted sub nom., Oswald v. Rodriguez, 407 U.S. 919, 92 S. Ct. 2459, 32 L.Ed.2d 805 (1972).[3] If a

prisoner can bring his § 1983 claims here without pursuing state judicial remedies, I see no reason to deny similar opportunity to these plaintiffs.

Since the other two members of this panel are divided, with one favoring abstention and the other dismissal, my preference for reaching the merits of the case now would leave the case without a disposition. In these circumstances, and solely to assemble a majority disposition, I concur in the result reached by Judge Clarie to abstain to afford the Connecticut Supreme Court an opportunity for further consideration of plaintiffs' claim to employ counsel of their choice.[4] While I do not believe such abstention is warranted in view of our obligation to decide constitutional questions properly brought to us, I fully share Judge Clarie's view that it would be desirable for the state courts to resolve this matter.

J. JOSEPH SMITH, Circuit Judge (dissenting):

I dissent. I would dismiss this action for want of a substantial federal question. *See* Martin v. Walton, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961); Suffling v. Bondurant, 339 F.Supp. 257 (D.N.M.), aff'd sub nom. Rose v. Bondurant (Chairman Bd. of N. Mex. Bar Examiners), 409 U.S. 1020, 93 S.Ct. 460, 34 L. Ed.2d 312 (1972). The admission to practice before the state courts in ordinary civil actions before them is a matter for those courts, with which we should not unnecessarily interfere. It may well be that the Superior Court has construed the new rule too narrowly, and

3. *See also* Russo v. Central School District No. 1, 469 F.2d 623, n. 5 (2d Cir. 1972): "Of course exhaustion of state judicial remedies is not a predicate to a federal court's jurisdiction in a sec. 1983 claim, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971) (*en banc*); cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972)."

4. The result thus reached is somewhat anamolous in that this Court is abstain-

ing to permit state appellate consideration of plaintiffs' claim yet is simultaneously enjoining the pending state wrongful death litigation. My preference would be to decide plaintiffs' claim promptly and thereby avoid the need to delay the state wrongful death action, but if comity is to be invoked to give the Connecticut Supreme Court further opportunity to resolve this problem, it does not seem inappropriate to require the Connecticut Superior Court to wait for the answer.

it may be that a more liberal admission policy more in tune with modern specialization and mobility would be desirable. *See* Admission of Non-Resident Attorneys Pro Hac Vice, American Bar Foundation, Research Memo, Series 1 (1968). But that is a matter for state policy determination. I cannot agree that there is demonstrated any violation of any constitutional right of the plaintiff to be represented by counsel here by denial of permission to an out-of-state lawyer who does not seek admission to the Connecticut bar, to conduct proceedings in a malpractice civil action in Connecticut courts. The Sixth Amendment's right to counsel in criminal cases which is enforced against the states under the Fourteenth Amendment is not directed to civil actions. Any constitutional claim must therefore be founded either in due process, privileges and immunities, or equal protection clauses of the Fourteenth Amendment, none of which so far as I can ascertain has been held to grant to a civil litigant, patient or other client the right to compel the admission of nonresidents to the practice of law, medicine, or other professions within a state. Moreover, even if such a claim should be held valid under the Fourteenth Amendment and 42 U.S.C. § 1983, it would appear that plaintiff's proper relief is by an appeal to the State Supreme Court, either from denial of the motion or from judgment in the malpractice action, and if necessary by certiorari to the United States Supreme Court. Our powers to stay state court proceedings are limited by statute, 28 U.S.C. § 2283, and by precedent. While § 1983 actions constitute an exception to the general § 2283 prohibition, Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), if we cannot interrupt state proceedings when a defendant claims that a prosecution constitutes a serious violation of First Amendment rights, *see* Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), I can perceive no reason for doing so here in a civil damage action.

*Mitchum, supra,* makes it quite plain that although the § 2283 prohibition is not an absolute bar, traditional notions of comity and equitable jurisdiction still prevail. Comity requires some showing of immediate and irreparable harm before state proceedings will be enjoined. The showing here is far short of that requirement. At best, Julien's claim is that the client much prefers Julien to indigenous talent. There is not claimed here any denial to the client of the right to be heard by any counsel qualified under the rules of the court. There is no claim of inability to obtain qualified counsel because of local, race or other prejudice or of any denial of the First Amendment right of association of similarly situated litigants. *Cf.* NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); United Transportation Union v. State Bar of Michigan, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971).

I would therefore not merely abstain, but would dismiss this action for injunctive and other relief for want of a substantial federal question.