# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

IN THE MATTER OF THE APPLICATION OF ROGER W. TITUS FOR ADMISSION TO PRACTICE PURSUANT TO RULE 1A:1.

October 9, 1972.

Record No. 8059.

Present, All the Justices.

*Roger W. Titus, pro se.*

*Stuart H. Dunn, Assistant Attorney General (Andrew P. Miller, Attorney General; Vann H. Lefcoe, Assistant Attorney General,* on brief), for the Commonwealth.

CARRICO, J., delivered the opinion of the court.

This matter involves the question of the validity of certain of the provisions of Rule 1:5 (now Rule 1A:1¹), Rules of Court, applicable

---

[1] "Rule 1A:1. **Foreign Attorneys—When Admitted to Practice in this State without Examination.**

"Any person who has been admitted to practice law before the court of last resort of any state or territory of the United States or of the District of Columbia may file an application to be admitted to practice law in this Commonwealth without examination, if counsel licensed to practice here may be admitted to practice there without examination.

"The applicant shall:

"(1) File with the clerk of the Supreme Court at Richmond an application, under oath, upon a form furnished by the clerk.

"(2) Furnish a certificate, signed by the presiding judge of the court of last resort of the jurisdiction in which he is entitled to practice law, stating that he has been so licensed for at least five years.

to the admission of foreign attorneys to practice law in this state without examination. Under the rule, as prerequisite to such admission, this court must determine that an applicant has "become a permanent resident of the Commonwealth." Rule 1A:1(4)(c), formerly 1:5(4)(c).

On November 22, 1971, Roger W. Titus, a member of the bar of the state of Maryland, filed with this court an application for admission to practice without examination pursuant to Rule 1:5. In his application, Titus stated that he was a permanent resident of the state of Maryland. In a covering letter, he indicated that he did not intend to become a resident of Virginia.

On December 2, 1971, we refused the application of Titus, and on January 21, 1972, he instituted an action in the United States District Court for the Eastern District of Virginia against this court, its members, and its clerk. In that action, Titus attacked the constitutionality of our rule applicable to the admission of foreign attorneys without examination.

A three-judge court was convened, and on May 17, 1972, the court granted a motion, filed on our behalf, for abstention upon our representation that Titus would be permitted to file with this court a petition for reconsideration of his application for admission. Titus filed the petition with us, the Virginia State Bar was granted leave to file a brief *amicus curiae*, and the matter was argued orally. The argument centered around the same points of alleged unconstitutionality of our rule as were presented to the action filed in the District Court.

"(3) Furnish a report of the National Conference of Bar Examiners concerning his past practice and record.

"(4) Pay a filing fee of fifty dollars.

"Thereafter, the Supreme Court will determine whether the applicant:

"(a) Is a proper person to practice law.

"(b) Has made such progress in the practice of law that it would be unreasonable to require him to take an examination.

"(c) Has become a permanent resident of the Commonwealth.

"(d) Intends to practice full time as a member of the Virginia bar.

"In the determination of these matters the Supreme Court may call upon the applicant to appear personally before a member of the Court or its executive secretary and furnish such information as may be required.

"'If all of the aforementioned matters are determined favorably for the applicant, he shall be notified that some member of the Virginia bar who is qualified to practice before the Supreme Court may make an oral motion in open court for his admission to practice law in this Commonwealth.

"Upon the applicant's admission he shall thereupon in open court take and subscribe to the oaths required of attorneys at law, whereupon he shall become an active member of the Virginia State Bar."

Titus contends that our rule is unconstitutional because it denies him due process and equal protection of law, violates his rights to liberty and to travel, and unlawfully burdens interstate commerce. He argues, citing *Schware* v. *Board of Bar Examiners*, 353 U.S. 232 (1957), that the only matters into which we may properly inquire are his fitness and capacity to practice law, and he asserts that the rule requiring him to become a resident of Virginia has no rational connection with those matters.[2]

The argument presented by Titus is interesting, but it tends to obscure the one simple issue we think is presented in this case, and that is: May a state constitutionally require that an applicant for admission to its bar without examination be a resident of that state as prerequisite to such admission?

This is a question upon which, so far as our research discloses, the Supreme Court of the United States has not expressly ruled. It is true that in *Schware* v. *Board of Bar Examiners*, *supra*, the court did say that while a state may require high standards of qualification for admission to the bar, any qualification must have a rational connection with the applicant's fitness or capacity to practice law. 353 U.S. at 239. But the court was not there dealing with a residency requirement. It had before it the question of the denial by the Board of Bar Examiners of New Mexico of Schware's application to take the bar examination, the denial having been based upon the prior use of aliases by Schware, his former membership in the Communist Party, and a record of previous arrests. The court held that refusal of Schware's application upon these grounds was a denial of due process and equal protection. However, there is nothing in the court's opinion which suggests that a residency requirement is precluded by constitutional principles.

Titus also relies upon *Shapiro* v. *Thompson*, 394 U.S. 618 (1969), where the Supreme Court declared invalid the one-year welfare residency requirements of several jurisdictions. But the court invalidated

[2] We note that Titus also attacks the provisions of (4)(d) of the rule, which require that he state that he intends to practice full time as a member of the bar of Virginia. He also assails the further provisions of the rule which state that if a person who has been admitted to practice under the rule no longer satisfies the residency or full-time practice requirements, his license may be revoked. Rule 1A:3, formerly 1:5.2. But our holding herein, *infra*, that a date-of-admission residency requirement is valid renders moot the questions presented by these further attacks since Titus refuses to meet even the date-of-admission requirement. Furthermore, Titus has not suggested that his refusal to become a resident of Virginia is based upon a fear that his license might later be revoked under Rule 1A:3. So we do not take the provisions of (4)(d) or 1A:3 into consideration.

only the "waiting period" aspect of residency as prerequisite to welfare benefits. It did not eliminate the basic requirement of residence, meaning "living in an established place of abode" and defined, "as is conventional, in terms of intent to remain in the jurisdiction," 394 U.S. at 636, n. 16, a definition which expressly excludes Titus in this case. And the court specifically refrained from passing upon the question of "the validity of . . . residence requirements determining eligibility . . . to obtain a license to practice a profession." 394 U.S. at 638, n. 21.

The Supreme Court has, however, taken action which we think has direct and important bearing upon the question before us. In *Martin v. Walton*, 368 U.S. 25 (1961), the court dismissed for want of a substantial federal question an appeal it had awarded from a decision of the Supreme Court of Kansas. The Kansas court's decision, reported under the name of *Martin v. Davis*, 187 Kan. 473, 357 P.2d 782 (1960), involved equal protection and due process attacks upon a Kansas rule and statute. The rule and statute provided in substance that "an attorney admitted to the Bar of Kansas who has been admitted to the Bar of another state and who is regularly engaged in the practice of law in that state shall associate local counsel before he can appear in the courts or before boards or commissions of Kansas." 187 Kan. at 475, 357 P.2d at 785.

The Kansas litigation began when Martin brought a mandamus action to compel a Kansas probate judge to permit him to file cases and to appear and try them without the association of local counsel. Mandamus was denied by the state district court, the Supreme Court of Kansas affirmed, and, as has been noted, the United States Supreme Court dismissed Martin's appeal for want of a substantial federal question.

The facts were interesting. Martin graduated from the University of Kansas Law School and was shortly thereafter licensed to practice law in Kansas and Missouri. He lived in Mission, Kansas, maintained an office there, and was attorney for that city. He was a member of the State Board of Tax Appeals of Kansas and of the state and local bar associations of Kansas. He had written an article on Kansas procedure which was published in the Kansas Law Review. But because he regularly engaged in the practice of law in the neighboring state of Missouri, Martin was denied the right to appear in Kansas courts without local counsel.

In dismissing Martin's appeal, the United States Supreme Court,

citing *Schware* v. *Board of Bar Examiners, supra,* stated that the Kansas rule and statute were "not beyond the allowable range of state action under the Fourteenth Amendment." 368 U.S. at 25-26. The court further said that it could not "disregard the reasons given by the Kansas Supreme Court for the Rules in question." 368 U.S. at 26. We will advert to those reasons later.

The importance of the *Martin* case to the question before us is this: If a state may constitutionally deny an attorney who is resident and licensed in that state the right to appear in its courts without local counsel because he regularly practices elsewhere, it surely can deny, as many states do, nonresident attorneys the right to appear *pro hac vice* without local counsel. And, by the same token, a state also should be able validly to deny a nonresident attorney the right to practice generally unless he agrees to become a resident upon admission. There is no difference in principle between denying a nonresident attorney the right to appear on a case-to-case basis from denying another nonresident attorney the right to practice generally.

The *Martin* case is important for another reason. The Kansas Supreme Court recognized that the rule and statute there in question created two classes of attorneys. The one class encompassed members of the Kansas bar regularly engaged in the practice of law in another state, who were required to associate local counsel, and the other included the members of the Kansas bar not regularly engaged in the practice of law elsewhere, who were not so required. The court held that the difference between the two classes rested upon a consideration which was real and not fanciful, having a direct and substantial relation to the objectives to be attained—to ensure the orderly administration of justice and to provide litigants with the services of knowledgeable resident attorneys.

Here, Titus contends that, with respect to admission, Virginia has created two classes of attorneys. The first, he says, consists of Virginia residents desiring to be admitted without examination who possess all the requisite qualifications and the other of nonresidents who do not desire to become residents of Virginia but who possess all the other necessary qualifications except residency. Such classification, Titus argues, is arbitrary, discriminatory, and unreasonable.

But we think that is not the classification Virginia has made. The true classification is this: In the one class are those desiring to be admitted to practice law without examination and in the other are

those desiring to be admitted by examination. As to both classes, residency rules apply. Of those seeking admission without examination, residency is required on date of admission. Those desiring to be admitted by examination must be residents on the date of application to take the bar examination and must signify their intention to continue as residents to the time of taking the examination. Code § 54-60.

We see nothing arbitrary, discriminatory, or unreasonable in the classifications under discussion whether the one advanced by Titus or the one set forth in the paragraph next above be considered as the true classification. Certainly, either classification rests upon a basis more real than the one upheld in *Martin*. And whether we apply the traditional test, that the classification be rationally related to a legitimate state interest, or the recent and more stringent test, that there must be a compelling state interest in the subject matter at issue, the result is the same. We think that Virginia's interest in the subject of regulating the legal profession is both legitimate and compelling and that our residency rule bears a direct and substantial relation to the object to be attained—to secure to the citizens of Virginia an informed, stable, and responsible bar.

In this connection, the reasons assigned by the Kansas Supreme Court for its rule, reasons which the United States Supreme Court said it could not disregard, become important. This is so because the effect of *Martin* was to uphold those reasons as having a rational connection with fitness and capacity, and they apply with equal force to the situation at hand. The reasons were: difficulty in securing the presence of the attorneys officed in Missouri at the call of court dockets; inability to procure service on the Missouri-officed attorneys without having to proceed to another state; failure of the Missouri-based attorneys to answer calls to appear in matters of urgency; and failure of the out-of-state attorneys to familiarize themselves with the rules of local practice and procedure.

More may be added. If Titus is correct, that a state may not impose a residency requirement as a condition of admission to practice law without examination, and if the fitness and capacity otherwise of a given nonresident attorney be conceded, the result is obvious. That attorney need only knock upon the courthouse door to gain instant entry before the courts of every state, whether or not the states he chooses require, as most state do, residency of those seeking admission without examination. If multi-state admission occurred generally as a result, and it surely would, inevitably a hit-and-run

type practice would develop that would be destructive of the standards of the legal profession, burdensome to the administration of justice, and inimical to the public interest.

Concededly, the same attorney, and many more like him, might, by examination, become admitted to the bars of many states and cause the same situation we foresee if residency is eliminated as a requirement of admission without examination. But the likelihood is much less that multi-state admission by examination would occur, and if it did occur, at least each state to which admission is so obtained would have the assurance that the attorneys thus admitted had gained sufficient knowledge of its laws to pass its examination.

This brings us to a consideration of a number of federal cases, all decided by three-judge courts, dealing with the question of the validity of residency requirements as prerequisite to admission to the bar by examination. In four of those cases, relied upon by Titus, *fixed terms* of residency, from six months to one year, were struck down. *Keenan* v. *Board of Law Examiners of State of N.C.*, 317 F. Supp. 1350 (E.D.N.C. 1970); *Webster* v. *Wofford*, 321 F. Supp. 1259 (N.D.Ga. 1970); *Lipman* v. *Van Zant*, 329 F. Supp. 391 (N.D.Miss. 1971); *Potts* v. *Honorable Justices of Supreme Court of Hawaii*, 332 F. Supp. 1392 (D.Ha. 1971). In a fifth case, *Suffling* v. *Bondurant*, 339 F. Supp. 257 (D.N.M. 1972), a fixed-term residency requirement of six months for admission to the bar was upheld.

But even the four cited cases which struck down fixed-term residency requirements are not authority for the proposition that a state may not impose any residency requirement at all. In *Keenan*, the court stated that it was expressing "no opinion upon the constitutional validity of rules requiring residency at the time of examination or of admission." 317 F. Supp. at 1362, n. 17. In *Webster*, the court clearly indicated that a state might validly require a reasonable period of residence prior to taking the bar examination for the purpose of permitting personal interviews and investigation. 321 F. Supp. at 1262. In *Lipman*, the court specifically ruled that a requirement of residency as of the date of application to take a bar examination, providing the state time to conduct an investigation, is constitutionally permissible. 329 F. Supp. at 404. And in *Potts*, the court approvingly recognized that "many states (and United States District Courts) distinguish between and regulate the respective practice privileges of 'active' members of the bar, i.e., those attorneys who reside in and have an office in the state, and 'inactive' members, i.e., those not so

residing in and having an office therein." 332 F. Supp. at 1398 (footnote omitted).

We think very significant the action taken by the *Lipman* court in disposing of the case before it. Lipman was a resident of Mississippi at the time he applied to take the bar examination, although he had not been a resident for the full one-year period required by Mississippi statute. He sought to have the statute declared unconstitutional and to have an injunction issued preventing enforcement of the one-year period of residency. Maureen Malone, who intervened in the proceedings and prayed for the same relief as did Lipman, was a nonresident at the time she applied to take the bar examination. The court granted Lipman the relief he had prayed for but denied all relief to Malone and to the class, *i.e.*, nonresidents, which she represented. 329 F. Supp. at 394.[3] The court concluded that "the requirement of residency at the date of application satisfies the demands of the Equal Protection Clause and withstands the challenge of nonresident persons." 329 F. Supp. at 404.

We think *Lipman*, just discussed, and *Suffling*, the fifth case cited above where a fixed-term preadmission residency requirement was upheld, are clear authority for the proposition that a date-of-admission residency requirement is valid. That is just the type residency requirement as is contained in our Rule 1A:1(4)(c), and we hold the rule valid.

Titus argues, however, that the ruling in *Lipman*, that a state may impose a requirement of residency at the time of making application for admission to the bar, is not available to sustain our rule. He says that the residency requirement upheld in *Lipman* is available only to permit investigation of an applicant and that, he asserts, is not the purpose of our rule. However, the purposes of our rule are irrelevant to our discussion at this point because Titus has made it clear throughout these proceedings that he does not intend to become a resident of Virginia at any time, for any period, or for any purpose however valid. So we think he stands in the same shoes as the unsuccessful applicant in *Lipman* who was denied all relief solely because she was, as is Titus, a nonresident at the crucial time for determining eligibility for admission.

Titus concedes that he has no "natural or Constitutional right to practice law." Stripped of its trimmings, his contention is merely

---

[3] In a later footnote, 329 F. Supp. at 399, the court stated that Malone had since become a resident of Mississippi and, if otherwise qualified, would be entitled to take the next bar examination.

that Virginia may not impose a residency requirement upon him as a condition of his admission to practice law in this state without examination. We hold that the Constitution does not preclude such a requirement, and so, upon reconsideration, we again refuse the application of Titus.

*Application refused.*